# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

FILED JUN 15 2018 IN THIS OFFICE Clerk U.S. District Court Greensboro, N.C. By_____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Cellular Telephone Assigned Call Number<br>(434) 710-9172 | ) ) ) Case No. 1:18 mJ 178 ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Information about the location of the cellular telephone with call number 434.710.9172.

located in the _____Middle_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:

Location information about the cellular telephone with call number 434.710.9172 within the custody of Sprint Spectrum

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1962 | Racketeer Influenced and Corrupt Organizations Act |
| 18 U.S.C. § 1959 | Violent Crimes in Aid of Racketeering |
| 18 U.S.C. § 924(c) | Possession of Firearm in Furtherance of a Crime of Violence |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Daniel P. Chelemer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/15/2018

_____
*Judge's signature*

City and state: Winston-Salem, North Carolina

Joi Elizabeth Peake, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

# INTRODUCTION

I, Daniel P. Chelemer, Federal Bureau of Investigation (FBI), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1. Your Affiant is employed as a Special Agent with the Federal Bureau of Investigation (FBI) and has been so employed since 2018. Your Affiant is currently assigned to the Charlotte Division, Greensboro Resident Agency. In this capacity, your Affiant is authorized to investigate matters involving violations of federal law.

2. As a Special Agent, your Affiant is authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3. During my tenure as an agent, I have received extensive training related to criminal investigations. Prior to joining the FBI I was employed as a Police Officer in Raleigh, North Carolina. I was a police officer for over six years. As a police officer I investigated numerous crimes to include the sale and distribution of illegal narcotics. I also received extensive training regarding responding to and investigating illegal narcotic sales and distribution offenses. I have also participated in the execution of numerous search and arrest warrants in a variety of criminal investigations.

4. My experience includes various investigations and several arrests pertaining to narcotics, including prescription pills, marijuana, heroin, ecstasy, methamphetamine and cocaine. These cases have led to successful prosecutions and convictions for various charges included in the Violations of Controlled Substances Act. I have made several narcotics related arrests. I have assisted numerous investigations where search warrants lead to the seizure of illegal narcotics. I have made numerous traffic stops where narcotics were located in varying amounts. As an investigator I have obtained and served multiple search warrants which lead to the seizure of narcotics and/or firearms.

5. I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41, authorizing agents of FBI to initiate the monitoring of the physical location of the cellular telephone with an assigned telephone number of (434) 710-9172 (hereinafter referred to as the **TARGET TELEPHONE**), utilized by KEVIN LAMONT TRENT JR., with service provided by Sprint Spectrum L.P., by the use of E-911 Phase 2 data (or other precise location information) (the "Requested Information") concerning the **TARGET TELEPHONE**, for a period of thirty (30) days. The **TARGET TELEPHONE** is being utilized in the United States, specifically in the Middle District of North Carolina.

6. I submit that there is probable cause to believe that the Requested Information will constitute or lead to evidence of violations of Title 18, United

2

States Code, Section 1962 (Racketeer Influenced and Corrupt Organizations Act); Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering); and Title 18, United States Code, Section 924(c) (Possession of Firearm in Furtherance of a Crime of Violence), and Title 18, United States Code, Section 1073 (Unlawful Flight to Avoid Prosecution), among other offenses, as well as to the identification of individuals who are engaged in the commission of these offenses.

## SOURCES OF INFORMATION

7. I make this affidavit based upon personal knowledge derived from my training, experience, and participation in this investigation, information that I have learned from discussions with other investigators, the review of written reports of investigations, arrests, and seizures, the review of reports of physical surveillance conducted by state and local officers or other federal agents, the review of telephone toll records, information from consensually monitored calls and court-authorized intercepts, and the review of reports of debriefings of sources of information and other witnesses. The facts related in this affidavit do not reflect the totality of information known to me or other officers, merely the amount needed to establish probable cause. Unless otherwise noted, wherever in this affidavit I asserted that a statement was

3

made, the information was provided by another law enforcement officer or witness who may have had either direct or indirect or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance. I do not rely upon facts not set forth herein in reaching my conclusion that a warrant should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of the application for search warrant.

## PROBABLE CAUSE

7. Law enforcement has learned that, in the summer of 2016, members of the Milla Bloods street gang and the Rollin 60s Crips street gang "tied the flag" in order to facilitate their criminal activities in the Danville, Virginia area at the expense of a rival Bloods gang called the 9-Trey Bloods.[1] (Although these gangs are normally rivals, there are Milla Bloods members who are related by blood or marriage to Rollin 60s Crips.) In response, the leader of the 9-Trey Bloods, Stevie Wallace, obtained a "greenlight" (i.e., permission) to kill the head of the Milla Bloods gang, DeShawn Anthony (aka Shon Don), and his second-in-command, Demetrius Staten (aka Truck), since the "tying of the flags" had not been approved or sanctioned by high-ranking

---

[1] "Tied the flag" is a gang expression for uniting or conspiring together.

4

Bloods leadership. When Anthony and Staten learned of the "greenlight," they conspired with members of their own gang and members of the Rollin 60s Crips to kill Wallace on August 20, 2016, and in the weeks leading up to it. Multiple individuals who were present at some of these planning meetings have relayed this information to law enforcement. These meetings are also reflected in private Facebook messenger conversations, which law enforcement has obtained pursuant to federal search warrants.

8. On August 20, 2016, multiple meetings occurred between members of the Rollin 60s Crips and the Milla Bloods. At least one of these meetings occurred at the apartment of W-1. W-1's apartment is located in the Southwyck Apartment complex, an affordable housing complex in Danville, Virginia. In general, the plan was to have Wallace (and his second-in-command) come to Southwyck Apartments, where various gang members were fanned out around the complex and an adjoining parking lot, armed and prepared to shoot Wallace to death.

9. At approximately 10:20 p.m., on August 20, 2016, a van drove into the apartment complex, which caused multiple individuals to begin shooting from different directions. Two of these individuals were standing in the window of W-1's apartment, which faces the parking lot. One of the occupants of the van, Christopher Motley, was killed in the gunfire. Neither van occupant

5

was the intended target. One witness has stated that the shooting was broadcast on Facebook Live.

11. After the murder, the shooters fled from the apartment complex to various locations in and around Danville, Virginia. In the hours and days after the murder, some of the shooters also made efforts to dispose of their firearms. Various individuals assisted the shooters in fleeing the murder scene as well as in disposing of the weapons.

11. W-2 was interviewed by law enforcement officers after waiving *Miranda* rights. In W-2's first interview with law enforcement, W-2 denied any involvement in the homicide and pointed at other individuals. After W-2 was convicted in Virginia state court for firearms-related charges, W-2 was again interviewed by law enforcement officers. After again waiving *Miranda* rights, W-2 provided information consistent with paragraphs 7-10 of this affidavit, including that W-2 participated in the planning to murder Wallace, along with other individuals, was present at Motley's murder, and, in fact, had also been one of the shooters in that event. W-2 also said Kevin Trent was one of the planners and shooters at the Motley murder.

12. After being arrested on Virginia state felony charges unrelated to this investigation, W-3 waived *Miranda* rights and answered questions from law enforcement officers. During the interview, W-3 provided information

6

consistent with paragraphs 7-10 of this affidavit, including that Kevin Trent was one of the planners and one of the shooters at the Motley murder.

13. A Federal Grand Jury indicted Trent and other co-defendants for violations of the above-referenced statutes on June 11, 2018. The Western District of Virginia issued an arrest warrant for Trent on June 12, 2018.

14. One of Trent's co-defendants is Kanas Trent (Kanas). On June 5, 2018, investigators obtained a recorded Danville City Jail (DCJ) inmate telephone call. The telephone call was between Trent and Kanas, who at the time was incarcerated in the DCJ. The telephone call occurred on June 2, 2018, 9:46 p.m. During the telephone conversation Trent identified his current cellular telephone number to Kanas as (434) 710-9172.

15. On June 8, 2018, Sprint Corporation provided subscriber records for call number (434) 710-9172 in response to a Federal Grand Jury Subpoena. The records revealed that the subscriber for the account was Mygenika Guy, billing address 18 Noel Avenue, Danville, Virginia, 24541. Trent and Guy are known to be close associates. For example, Trent posted the following on Facebook in March 2017: "Mygenika Guy I love You shorty."

16. On June 14, 2018, law enforcement attempted to arrest Trent in Danville, Virginia, at an address where it was believed he was living based on surveillance and Facebook posts. Trent was not located at the address.

17. W-4, who was interviewed by FBI personnel on June 14, 2018 as law enforcement attempted to locate Trent, reported driving Trent to North Carolina on the morning of June 14, 2018. W-4 dropped Trent off at an unknown location close to Route 29 near Reidsville, North Carolina, shortly after 8:00 AM.

18. W-4 permitted FBI personnel to review her cellular phone call history. W-4's call history revealed three missed calls from (434) 710-9172 on the morning of June 14, 2018, and one accepted call from (434) 710-9172 at 10:17 AM on June 14, 2018. W-4 purported not to know the identity of the user of (434) 710-9172.

19. In my training and experience, I have learned that Sprint Spectrum L.P. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

8

Case 1:18-mi-00178-JEP   Document 1   Filed 06/15/18   Page 9 of 12

Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20. Based on my training and experience, I know that Sprint Spectrum L.P. can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint Corporation's network or with such other reference points as may be reasonably available.

21. Based on my training and experience, I know that Sprint Corporation can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

Based on the foregoing, there is probable cause to believe that the requested information will lead to evidence regarding the activities described above. The requested information is necessary to determine the location of the user of telephone number (434) 710-9172 (the TARGET TELEPHONE) so that

law enforcement agents can conduct physical surveillance of the individual in connection with this investigation.

WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41, it is requested that the Court issue a warrant and order authorizing agents of FBI to obtain the Requested Information for a period of thirty (30) days.

IT IS FURTHER REQUESTED that the Court direct Sprint Spectrum L.P. to assist agents of the FBI by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct FBI, the service provider for the TARGET TELEPHONE, to initiate a signal to determine the current location of the TARGET TELEPHONE on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the TARGET TELEPHONE, for a period of thirty (30) days from the date of the receipt of this order. Reasonable expenses incurred pursuant to this activity will be processed for payment by the FBI.

IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target telephone outside of daytime hours.

IT IS FURTHER REQUESTED, pursuant to 18 U.S.C. § 3103a(b), that the order entered by this Court authorize delaying notification of the execution of the warrant for a period not to exceed thirty (30) days, because there is reasonable cause to believe that providing immediate notification would have an adverse result, including flight from prosecution, destruction of or tampering with evidence, intimidation of witnesses, and may seriously jeopardize the investigation, which is multi-jurisdictional and which involves the use of undercover agents and officers. It is requested that such period of delay thereafter be extended by the Court for good cause shown.

Daniel P. Chelemer
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 15 day of June, 2018.

JOI ELIZABETH PEAKE
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA